UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KIMBERLY VANBIBBER,

                    Plaintiff,

        v.

CAROLYN W. COLVIN, Commissioner of
Social Security,

                    Defendant.

Case No. C13-546-RAJ-BAT

**REPORT AND
RECOMMENDATION**

Kimberly Vanbibber appeals the denial of her Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") applications. She contends the ALJ erred by (1) discounting certain medical opinions; and (2) construing a lack of evidence against her credibility, rather than developing the record. Dkt. 23. As discussed below, the Court recommends **AFFIRMING** the Commissioner's final decision and **DISMISSING** the case.

## BACKGROUND

Ms. Vanbibber applied for DIB in 2009 and SSI in 2010, alleging disability as of October 2, 2006, and October 2, 2007, respectively.[1] Tr. 142-49. After conducting a hearing on August

---

[1] Subsequent references to Ms. Vanbibber's alleged onset date refer only to October 2, 2007. *See, e.g.*, Tr. 21, 168.

REPORT AND RECOMMENDATION - 1

1    4, 2011, the ALJ, applying the five-step disability evaluation process, issued a decision[2] finding

2    at steps one, two, and three that Ms. Vanbibber last worked on October 2, 2007; that attention

3    deficit hyperactivity disorder, bipolar disorder, personality disorder with avoidant and dependent

4    features, and anxiety disorder were severe impairments; and that these impairments did not meet

5    the requirements of a listed impairment.[3]   Based on her evaluation of the evidence of record, the

6    ALJ found Ms. Vanbibber retained the Residual Functional Capacity ("RFC") to perform a full

7    range of work at all exertional levels, limited to one- to three-step tasks with no detailed work;

8    and that she could have only ordinary production requirements, should work in isolation, and

9    should have only superficial contact with public and coworkers.  The ALJ found at steps four

10   and five that Ms. Vanbibber could not perform her past work but was not disabled because there

11   were other jobs in the national economy that she could perform.  Tr. 21-33.

12                                    **DISCUSSION**

13   *A.*      ***The ALJ did not commit reversible error in her evaluation of the medical evidence***

14             Examining psychologist Carl C. Epp, Ph.D., and treating therapists Molly Donovan,

15   MHP, and Nina Kahm, MHW, MSW, assigned Ms. Vanbibber Global Assessment of

16   Functioning ("GAF") scores between 47 and 50.  The GAF Scale provides a measure for an

17   individual's overall level of psychological, social, and occupational functioning.  Am.

18   Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32-34 (4th ed. 2000).

19   The Scale "may be particularly useful in tracking the clinical progress of individuals in global

20   terms, using a single measure."  *Id.* at 30.  A GAF range of 41-50 reflects "[s]erious symptoms

21   (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment

22   [2] The Appeals Council denied review making the ALJ's decision the Commissioner's final decision.

23   [3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

1   in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 32.

2   Ms. Vanbibber contends the ALJ committed reversible error by failing to give sufficient reasons

3   to discount the GAF scores.  Dkt. 14 at 10-15.

4     **1. Carl C. Epp, Ph.D., examining psychologist**

5     The ALJ summarized Dr. Epp's opinions as follows:

6      He opined the claimant has moderate limitations in understanding, remembering,
   and following complex instructions; learning new tasks; responding appropriately
7      to and tolerating the pressures and expectations of a normal work setting; and
   controlling physical and motor movements and main appropriate behavior.  He
8      also indicated the claimant has a marked limitation in exercising judgment and
   making decisions.  This opinion is consistent with finding the claimant is capable
9      of one to three step tasks with no detailed work and being able to keep up with
   ordinary production requirements. . . .  He also suggested the claimant has only
10     mild limitations in interacting with the public, coworkers, and supervisors. This
   opinion is less restrictive than the social limitations given in the above residual
11     functional capacity.

12  Tr. 30.  The ALJ accorded "significant weight" to Dr. Epp's opinions, *id.*, a finding Ms.

13  Vanbibber does not challenge.  The ALJ, however, discounted the GAF score of 47-48 that Dr.

14  Epp assigned.  Tr. 30-31.  The ALJ's reasons for doing so consist of a boilerplate recitation of

15  what GAF scores are and why, as a matter of course, they are not particularly probative of

16  disability.  *Id.*

17    Where, as here, an examining physician's opinion is contradicted by that of another

18  physician, the opinion may not be rejected without "'specific and legitimate reasons' supported

19  by substantial evidence in the record for so doing." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th

20  Cir. 1996) (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  Ms. Vanbibber

21  contends the ALJ erred because rather than providing legitimate reasons specific to Dr. Epp's

22  opinion, the ALJ rejected Dr. Epp's GAF score due to a general disapproval of GAF scores.

23  Dkt. 14 at 11.  Furthermore, Ms. Vanbibber argues, in essence, that Dr. Epp's GAF score is an

REPORT AND RECOMMENDATION - 3

1    opinion that she is disabled, and therefore the ALJ's erroneous rejection of the score was harmful

2    error.  *Id.*  The Commissioner does not directly respond to the issue of whether the ALJ provided

3    an invalid reason for rejecting Dr. Epp's GAF score.  Instead, the Commissioner focuses on the

4    issue of harm, responding that Ms. Vanbibber "places too much importance on the GAF scores

5    contained in the record" because "a GAF score in the range of 41-50 does not necessarily mean

6    that an individual cannot keep a job."  Dkt. 15 at 9.

7          With respect to the threshold issue of whether the ALJ provided a specific and legitimate

8    reason to reject Dr. Epp's GAF score, the Court agrees with Ms. Vanbibber that the ALJ erred.

9    As noted above, the ALJ's decision contains a boilerplate discussion of why GAF scores do not

10   correlate with a finding of disability but does not articulate any specific reason to reject Dr.

11   Epp's GAF score.  The ALJ's discussion amounts to a determination that, as a matter of course,

12   GAF scores are not relevant evidence and can be ignored.  This is an erroneous view because it

13   is at odds with the Social Security regulations.  A GAF score that is assigned by an acceptable

14   medical source is a medical opinion as defined in 20 C.F.R. §§ 404.1527(a)(2) and

15   416.927(a)(2), and an ALJ must assess a claimant's residual functional capacity based on all of

16   the relevant evidence in the record, including medical source opinions, 20 C.F.R. §§

17   404.1545(a), 416.945(e).  As such, the regulations indicate that GAF scores are relevant evidence

18   that should be considered—not inconsequential evidence that can be ignored.[4]  Therefore,

19

20   [4] The Ninth Circuit Court of Appeals has not offered a detailed analysis of the role GAF scores
     play in the disability determination and how an ALJ should approach them, and its guidance on
     these issues is inconsistent.  For example, the court's treatment of the GAF score in *Rollins v.*
21   *Massanari*, 261 F.3d 853 (9th Cir. 2001), indicates that a GAF score is relevant evidence bearing
     on the disability determination.  This is because the court supported its conclusion that the ALJ
22   properly discounted the claimant's testimony by noting that the doctors who discharged her after
     treatment for addiction to painkillers "said that she had 'no restrictions on activity' and gave her
23   a [GAF] level of 70, 'indicating only mild symptoms and generally quite adequate function.'"
     *Id.* at 857.  By contrast, in a cursory, unpublished opinion, the court indicated that GAF scores

1   because the ALJ in this case did not reject Dr. Epp's GAF score based on legitimate reasons

2   specific to his opinion, the ALJ erred.

3          Nevertheless, the Court concludes that this error does not warrant reversal because Ms.

4   Vanbibber has not satisfied her burden of establishing harm.  *See Molina v. Astrue*, 674 F.3d

5   1104, 1111 (9th Cir. 2012) (court may not reverse unless error is harmful, and claimant has

6   burden of showing harm).  Contrary to Ms. Vanbibber's argument, Dr. Epp did not opine that she

7   is disabled.  As a general matter, a GAF score is not dispositive of mental disability for social

8   security purposes.  *See McFarland v. Astrue*, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (citing

9   Revised Medical Criteria for Evaluating Mental Disorders & Traumatic Brain Injury, 65 Fed.

10  Reg. 50746, 50764-50765 (Aug. 21, 2000) ("The GAF score does not have a direct correlation to

11  the severity requirements in our mental disorders listings.")); *see also Gutierrez v. Astrue*, No.

12  12–cv–1390 MEJ, 2013 WL 2468344, at *19 (N.D. Cal. June 7, 2013) ("A GAF score of 50 does

13  not necessarily establish an impairment seriously interfering with the claimant's ability to

14  perform basic work activities.").  Error with respect to a low GAF score, therefore, is not *per se*

15  harmful.  Hence, a claimant must establish that the erroneous treatment of a GAF score is

16  harmful in light of the entire record.

17         In this case, however, the record establishes that by assigning Ms. Vanbibber a GAF

18  score of 47-48, Dr. Epp did not opine she is disabled.  In fact, Dr. Epp opined "the clinical

19  impression here is that this is a person who is actively resisting return-to-work activities."  Tr.

20  241.  He went on to note that although Ms. Vanbibber had cognitive limitations, her "common

21  sense ability is probably within normal limits"; that her concentration limits were unclear

22  need not even be considered.  *Pinegar v. Comm'r of Soc. Sec. Admin.*, 499 Fed Appx. 666, 667
    (9th Cir. 2012) ("[T]his Court has not found error when an ALJ does not consider [GAF

23  scores]." (citing *Chavez v. Astrue*, 699 F. Supp. 2d 1125, 1135 (C.D. Cal. 2009))).  Because the
    approach in *Rollins* aligns with the Social Security regulations, the Court follows it here.

because she did not "give full and good faith effort throughout the testing portion of the evaluation"; and that her poor reading test results were not accurate indicators of her ability to read and write. Tr. 241-42. In short, there is nothing in the record showing Dr. Epp opined or found Ms. Vanbibber was disabled. To the contrary, as noted above, the ALJ found that in Dr. Epp's opinion, Ms. Vanbibber had limitations but still retained the capacity to work. This is a finding that goes unchallenged. Accordingly, Ms. Vanbibber has not shown harmful error with respect to the ALJ's treatment of Dr. Epp's GAF score. The Court thus recommends the Commissioner be affirmed.

### 2. *Molly Donovan, MHP, and Nina Kahm, MHW, MSW, treating therapists*

Ms. Donovan and Ms. Kahm assessed GAF scores of 49-50. Tr. 374, 389, 391, 584. As with Dr. Epp's GAF score, the ALJ rejected these scores for boilerplate reasons having to do with GAF scores in general, rather than the particular scores assessed by the therapists. Tr. 30-31.

Ms. Donovan and Ms. Kahm are considered "other sources" under the Social Security regulations, and therefore an ALJ may reject their opinions for "germane" reasons, rather than the higher "specific and legitimate" standard applicable to examining psychologists like Dr. Epp. *See* 20 C.F.R. §§ 404.1513(a) and (d), 416.913(a) and (d); Social Security Ruling ("SSR") 06-03p; *Molina*, 674 F.3d at 1111. The Court, however, need not decide whether the ALJ's boilerplate reasons were germane because even if they were not, Ms. Vanbibber has not established that the ALJ's rejection of the therapists' scores was harmful.

As discussed above, the GAF scores Ms. Donovan and Ms. Kahm assigned are not, alone, evidence establishing Ms. Vanbibber is disabled, and thus an ALJ's erroneous rejection is not *per se* reversible error. Ms. Vanbibber has not identified anything in Ms. Donovan's and Ms.

1   Kahm's notes indicating that they opined Ms. Vanbibber suffered from limitations that were

2   disabling or that she had limitations the ALJ failed to consider.  *See* Dkt. 14 at 14.  Indeed, other

3   than the GAF scores, there is nothing in their notes that indicates Ms. Vanbibber has functional

4   limitations that are disabling.  Most of the notes appear to be a recitation of what Ms. Vanbibber

5   said to Ms. Donovan and Ms. Kahm.  The ALJ properly discounted Ms. Vanbibber's testimony

6   for numerous reasons, as discussed below, and therefore to the extent Ms. Donovan's and Ms.

7   Kahm's notes recorded limitations based on statements made by Ms. Vanbibber, the ALJ

8   properly discounted those statements.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir.

9   2008) (an ALJ may reject an "opinion if it is based 'to a large extent' on a claimant's self-reports

10  that have been properly discounted as incredible" (citation omitted)).  Accordingly, because Ms.

11  Vanbibber has failed to establish that she was prejudiced by any failure on the ALJ's part to

12  provide germane reasons to reject Ms. Donovan's and Ms. Kahm's GAF scores, the Court

13  recommends the Commissioner be affirmed.

14  ***B.      The ALJ did not have a duty to further develop the record***

15          Ms. Vanbibber argues that the ALJ erred by construing the absence of certain evidence

16  against her credibility, instead of further developing the record to obtain that evidence.  The ALJ

17  noted that although Ms. Vanbibber claimed to have received special education, no school records

18  corroborated that allegation, and in light of Ms. Vanbibber's ability to graduate from high school

19  even after giving birth to her first child, the ALJ inferred that her "academic abilities were not

20  substantially impaired."  Tr. 27.  The ALJ also found Ms. Vanbibber failed to support her

21  allegation that she did not obtain further counseling because her medical benefits expired; the

22  ALJ noted that Ms. Vanbibber had not submitted "convincing evidence that she has explored all

23  possible resources, e.g., clinics, charitable agencies, public assistance agencies, etc. and that free

REPORT AND RECOMMENDATION - 7

1    or subsidized treatment is not reasonably available in the local community." Tr. 27.[5]

2          While Ms. Vanbibber bears the burden of proving she is disabled, the ALJ also has a duty

3    to further develop the record if it is insufficient or ambiguous.  *See Meanel v. Apfel*, 172 F.3d

4    1111, 1113 (9th Cir. 1999); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  The ALJ

5    did not find the record to be insufficient or ambiguous.  But even assuming that the ALJ should

6    have obtained additional evidence to determine whether Ms. Vanbibber received special

7    education, or whether she could have found a way to obtain counseling despite a lack of

8    healthcare benefits, any error would be harmless because the ALJ provided numerous additional

9    *unchallenged* reasons to discount Ms. Vanbibber's credibility.  Thus, even if the factual support

10   for findings regarding special education and lack of counseling should have been further

11   developed, those errors would not invalidate the overall credibility determination, which is not

12   challenged.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

13                                      **CONCLUSION**

14         For the foregoing reasons, the Court recommends that the Commissioner's decision be

15   **AFFIRMED** and this case **DISMISSED**.

16         A proposed order accompanies this Report and Recommendation.  Objections, if any, to

17   this Report and Recommendation must be filed and served no later than **December 10, 2013.**  If

18   no objections are filed, the matter will be ready for the Court's consideration on **December 13,**

---

19   [5] As support for her finding, the ALJ cites SSR 82-59, which provides that a claimant provides a
20   justifiable excuse for failing to obtain treatment if he or she is "unable to afford prescribed
     treatment which he or she is willing to accept, but for which free community resources are
     unavailable."  1982 WL 313384, at *4 (Jan. 1, 1982).  The SSR goes on to indicate that "[a]ll
21   possible resources (e.g., clinics, charitable and public assistance agencies, etc.), must be
     explored.  Contacts with such resources and the claimant's financial circumstances must be
22   documented."  *Id.*  While Ms. Vanbibber argues that SSR 82-59 does not apply because the ALJ
     did not find that her failure to pursue treatment was the reason the ALJ found her not disabled,
23   but only found that it undermined her credibility, she cites no Ninth Circuit authority so holding.
     Dkt. 14 at 17 (citing *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001)).

**2013**.  If objections are filed, any response is due within 14 days after being served with the

objections.  A party filing an objection must note the matter for the Court's consideration 14

days from the date the objection is filed and served.  Objections and responses shall not exceed

twelve pages.  The failure to timely object may affect the right to appeal.

       DATED this 26th day of October, 2013.


                                _____
                                BRIAN A. TSUCHIDA
                                United States Magistrate Judge

REPORT AND RECOMMENDATION - 9